UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Coyne's & Company, Inc., a Minnesota
corporation,

      Plaintiff,

v.                                MEMORANDUM OPINION
                                         AND ORDER
                                     Civil No. 07-4095

Enesco, LLC, an Illinois limited
liability company.

      Defendants.

_____

      Paul L. Ratelle and Thomas A. Forker, Fabyanske, Westra, Hart & Thomson, P.A. for and on behalf of Plaintiff.

      Michael J. Steinlage, Larson King, LLP and James V. Garvey, Veder, Price, Kaufman & Kammholz, P.C. for and on behalf of Defendant.

_____

      This matter is before the Court upon Plaintiff's motion for a temporary restraining order.

Background

      Plaintiff Coyne's & Company, Inc. ("Coyne's") is a giftware company that has been in business for over 50 years.  Complaint ¶ 2.  It offers numerous product lines, including "A Breed Apart" and "Sherratt & Simpson".   Coyne's entered into a Distributor Agreement ("Agreement") in 2005 with Country Artist, Ltd. ("CA"), a company formed under the laws of England.  Coyne Decl. ¶ 2, Ex. A.  Pursuant to the Agreement, Coyne's was given the exclusive right to sell, distribute, market

1

and advertise all lines of CA products (the "Products"), as well as all the trade

names, trade marks and copyrights associated with the Products in the United

States and Mexico through December 2007.  In exchange for the exclusive rights

described above, Coyne's paid CA a 50% markup on the Products.  Id.

Coyne's asserts it expended substantial time, money and effort to develop

an extensive marketing plan for the U.S. market.  Coyne's also developed and

produced high quality catalogs advertising the Products for sale in 2006 and 2007.

These catalogs display a copyright notice in favor of Coyne's.  Id. ¶ 5.

Furthermore, each Product has a label affixed to it that displays a product

description, Coyne's catalog number, a bar code and the following statement

"Country Artists is exclusively distributed by Coyne's & Company in the USA."  Id.

¶ 6, Exs. M and N.

Beginning in July 2006, Coyne's began receiving notifications from CA that

many of Coyne's purchase orders would be delayed due to problems in the

Chinese factories that produced the Products.  These delays continued through

July 2007.  On July 27, 2007, CA proposed to modify Coyne's payment obligations

for certain outstanding orders as well as allow shipping discounts to Coyne's.  Id. ¶

7.

Coyne's asserts that on August 13, 2007, it learned through a press release

that Defendant Enesco, LLC ("Enesco") had acquired the business assets,

including the intellectual property, of CA.  Id. ¶ 9, Ex. P.  Three days earlier, CA

had been placed into receivership under the United Kingdom's Insolvency Act of

1986.  Id. ¶ 10.  On the day it learned of Enesco's purchase, Enesco's President and

CEO Basil Elliott telephoned Coyne's President and CEO Michael Coyne to discuss

the purchase.  During this conversation, Elliott informed Coyne that Enesco had

no plans at that time for the U.S. market, but he acknowledged Coyne's exclusivity

rights under the Agreement.  Id. ¶ 11.  Thereafter the parties had many

discussions concerning the Agreement and outstanding orders that Coyne's had

already paid for, but had received no delivery.

On August 21, 2007, Coyne's received a letter from the CA receivers

purporting to notify them of the termination of the Agreement pursuant to

Section 5.4 of the Agreement. Id. ¶ 16, Ex. R.  By letter dated August 23, 2007,

Coyne's responded to the notice, asserting it had no legal effect.  Id., Ex. S.

In the meantime, the parties met to discuss the possibility of working out an

agreement with respect to the Product Coyne's had previously ordered and the

possibility of a future business relationship.  Id., Ex. U.  To that end, Enesco

required Coyne's to disclose certain confidential and proprietary information

relating to the purchase orders.  Coyne's agreed to disclose this information if

Enesco signed a mutual nondisclosure agreement.  The parties executed a mutual

nondisclosure agreement on August 22, 2007.

Coyne's asserts that it still has not received all the Product it previously ordered and paid for, and that Enesco has interfered with Coyne's attempts to obtain said Product.  Guggenberger Aff., ¶ 7.

On September 21, 2007, Enesco issued a Press Release announcing that Enesco would be distributing the Country Artists brands in the U.S.  Coyne Aff., Ex. W.

Coyne's has filed suit against Enesco asserting the following causes of action: 1) interference with contractual relations; 2) interference with prospective business relations; 3) federal trademark infringement; 4) federal unfair competition; 5) copyright infringement; 6) violation of Minn. Stat. § 325D.44; 7) violation of Minn. Stat. § 325C.01; and 8) misappropriation of goodwill.

Before the Court is Coyne's motion for injunctive relief.  Coyne's seeks an Order preventing and enjoining Enesco, and any person acting on its behalf or in concert with, from 1) violating Coyne's exclusive right to advertise, promote, sell and distribute the CA product line in the U.S. and Mexico; 2) infringing upon Coyne's right to use CA trade names, trade marks and copyrights in connection with its exclusive rights under the Agreement; 3) using confidential information Enesco acquired during purported business opportunity discussions with Coyne's and subject to a Mutual Nondisclosure Agreement between the parties; and 4) interfering with Coyne's orders, shipments and delivery of the Product to Coyne's.

Standard

The Eighth Circuit has established the following analysis to be used in

considering a request for preliminary injunctive relief:

> [W]hether a preliminary injunction should issue involves
> consideration of (1) the threat of irreparable harm to the movant; (2)
> the state of balance between this harm and the injury that granting
> the injunction will inflict on other parties litigant; (3) the probability
> that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); accord

Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1090 (D. Minn. 1981), aff'd, 684

F.2d 565 (8th Cir. 1982).

1.  Likelihood of Success on the Merits.

A.  Rights under the Agreement

Coyne's argues the Agreement is governed by the Minnesota Franchise Act.

Minn. Stat.  § 80C.01.  Coyne's argues that a franchise is defined by three

elements: 1) a right granted to the franchisee to engage in business using the

franchiser's trade name or other commercial symbol; 2) a "community of interest"

in the marketing of goods or services between the franchisee and franchiser; and

3) a franchise fee paid by the franchisee.  OT Industries, Inc. v. OT-tehdas Oy

Santasalo-Sohlberg Ab, 346 N.W.2d 162, 165-66 (Minn. Ct. App. 1984).  The

applicability of the Minnesota Franchise Act is highly relevant with respect to

Coyne's request for preliminary injunctive relief, because if the franchise act

applies, irreparable injury is presumed.  Upper Midwest Sales v. Ecolab, Inc., 577

N.W.2d 236, 241 (Minn. Ct. App. 1998).

The parties dispute whether Coyne's paid CA a franchise fee.  The statutory

definition of "franchise fee" is

> any fee or charge that a franchisee or subfranchisor is required to pay or
> agrees to pay for the right to enter into a business or to continue a business
> under a franchise agreement, including, but not limited to, the payment
> either in lump sum or by installments of an initial capital investment fee,
> any fee or charges based upon a percentage of gross or net sales whether or
> not referred to as royalty fees, any payment for goods or services, or any
> training fees or training school fees or charges . . .

Minn. Stat.  § 80C.01, subd. 9.  Certain payments are specifically excluded from

this definition.  See Minn. Stat. § 80C.01., subd. 9(a) - (f).  For example, payments

for the purchase of goods or an agreement to purchase goods at a bona fide

wholesale price are not considered a franchise fee.  Minn. Stat. § 80C.01, subd. 9

(a).

"Not all payments made by a purported franchisee over the course of a

business relationship constitute franchise fees."  Sound of Music v. Minnesota

Mining and Manufacturing, 477 F.3d 910922 (7th Cir. 2007) (citing Minn. Stat.  §

80C.01, subd. 9).  For example, ordinary business expenses do not constitute

franchise fees.  Id. (citing OT Indus., 346 N.W.2d at 167.)  A minimum sales

requirement also does not constitute a franchise fee.  Upper Midwest Sales, 577

N.W.2d at 241-43.  In Hogin v. Barnmaster, Inc., C3-02-1880, 2003 WL 21500044

*4-5 (Minn. Ct. App. 2003) the court held that an 80% markup on a training fee, over the defendant's cost, did not constitute a franchise fee because the right to enter into a business relationship with the defendant was not predicated on the payment of the training fee.

Coyne's asserts it pays a franchise fee in the form of the 50% markup for the Product, and that such markup does not fall within any of the exceptions to the statutory definition of franchise fee.  Enesco responds that as CA was in the business of selling goods, the 50% markup represents only CA's profits, and is not a fee in exchange for a franchise.  The Court agrees.  The 50% markup for the Products constitutes an ordinary business expense for a distributor, rather than a franchise fee to CA.  Coyne's was not required to pay any fees for the right to enter into a business relationship with CA.  Accordingly, the Agreement is not governed by the Minnesota Franchise Act.

Coyne's also argues Enesco is violating its exclusive rights to CA's copyrights in relation to the Products, trade marks and trade names.  Coyne's asserts that as it was the exclusive distributor of the Products in the U.S. and Mexico, it follows that Coyne's right to use CA's copyrights and trademarks in the U. S. and Mexico were also exclusive.  Because it had exclusive rights to use such intellectual property, Coyne's asserts it has standing to assert infringement claims.  Wildlife Int'l, Inc. v. Clements, 591 F. Supp. 1542, 1545 (D.C. Ohio 1984).

Contrary to Coyne's assertions, the Court finds that Coyne's was not granted

exclusive rights to CA's intellectual property by the terms of the Agreement.

Rather, it appears that Coyne's obtained a non-exclusive license to use CA's trade

marks.  The word "exclusive" does not appear in any provision concerning the use

of trademarks or copyrights.  For example, Section 7.2 of the Agreement provides:

> COUNTRY ARTISTS hereby authorises COYNE'S to use the Trade Marks in the Territory in relation to the Products and for purposes only of exercising its rights and performing its obligations under this Agreement.  Such rights shall cease immediately upon termination of this Agreement, other than as is necessary to make sales pursuant to Section 5 or Section 6.2 hereof.

The Agreement further provides that Coyne's right to use CA's intellectual
property

is limited.  Section 7.7 provides:

> Except as provided in this Agreement COYNE'S shall have no rights in respect of any intellectual property rights however used by COUNTRY ARTISTS in relation to Products and COYNE'S hereby acknowledges that it shall not acquire any rights in respect thereof and that such intellectual property rights are and shall remain vested in and controlled by COUNTRY ARTISTS.

Having failed to establish an exclusive license to use CA's trade marks,

Coyne's does not have standing to bring an infringement claim against Enesco.

Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc., 468 F. Supp. 2d 1078, 1094

(D.S.D. 2006) (under common law, only the owner of a trademark has standing to

seek relief for infringement).  Even if Coyne's did have an exclusive license to use

CA's trade marks, an exclusive licensee cannot sue the owner of such trade mark.

8

Westowne Shoes, Inc. v. Brown Group, Inc., 104 F.3d 994, 997 (7th Cir. 1997)

cert. denied 522 U.S. 861 (1997) (finding that owner can do anything with trade

mark if he wants, including attaching it to goods of poor quality or different types

of goods).

The same is true with respect to CA's copyrights.  "The Copyright Act

authorizes only two types of claimants to sue for copyright infringement:  (1)

owners of copyrights, and (2) persons who have been granted exclusive licenses

by owners of copyrights.  Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d

27, 32 (2nd Cir. 1982)) (citing 17 U.S.C. § 501(b) (Supp. IV 1980)) See also, 3-12

Nimmer on Copyright § 12.02 (2007) (only parties with ownership rights have

standing to bring copyright infringement claims).  Coyne's has not established an

exclusive license to use CA's copyrights, nor the right to sue the owner of such

copyrights for infringement.

2.  Irreparable Harm

Coyne's must show it will suffer irreparable harm to be entitled to injunctive

relief.  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted)

(failure to show irreparable harm is an independent basis upon which to deny a

preliminary injunction.)  Relying on the presumption of irreparable harm

established for a violation of the Minnesota Franchise Act or for trade mark or

copyright infringement, Coyne's asserts it will suffer irreparable harm if the

requested injunction is not granted.  See West Publ'g Co. v. Mead Data Cent., Inc.,

799 F.2d 1219, 1229 (8th Cir. 1986).

Coyne's has failed, however, to establish a likelihood of success on the

merits of its claims that the Minnesota Franchise Act governs in this case, or that

Coyne's has standing to sue Enesco from trademark and copyright infringement.

Accordingly, irreparable harm will not be presumed here.

Based on the remaining claims asserted, specifically the interference claims,

the Court finds that Coyne's has an adequate remedy at law.[1]  Any damages

Coyne's may suffer are measurable in money damages.  "When there is an

adequate remedy at law, a preliminary injunction is not appropriate."  Watkins,

346 F.3d at 844.  See also, Modern Computer Systems, Inc. v. Modern Banking

Systems, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (termination of distributor

agreement did not establish irreparable harm); MacDonald v. Hopps, Civ. No. 03-

6445, 2004 WL 114940 (D. Minn.  Jan. 13, 2004) (adequate remedy at law for

alleged violation of distributor agreement); Best Vendors Co. v. Win Stuff, LLC,

Civ. No. 00-523, 2000 WL 34240391 at *2-3 (D. Minn. Mar. 13, 2000) (same).

---

[1]In so finding, the Court expresses no opinion as to merits of such claims.

IT IS HEREBY ORDERED that Plaintiff's Motion for a Temporary Restraining

Order and Permanent Injunction [Doc. No. 3] is DENIED.

Date: October 12, 2007

s / Michael J. Davis
Michael J. Davis
United States District Court

Civil No. 07-4095